IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-cv-01351-ZLW-CBS

PAUL PALECEK # 88838,
        Plaintiff,
v.

ARISTEDES ZAVARAS,
KEVIN MILYARD,
FELICIA BROOKS,
ERIC HOFFMAN,
JOHN CHAPDELAINE, and
JEFF REVORD, all Defendants in their official and individual capacities,
        Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

Magistrate Judge Craig B. Shaffer

This civil action comes before the court on "Defendants' Motion for Summary Judgment" (filed September 30, 2010) (Doc. # 42).  Pursuant to the Order of Reference dated September 30, 2009 (Doc. # 15) and the memorandum dated October 1, 2010 (Doc. # 43), this matter was referred to the Magistrate Judge.  On October 1, 2010, the court directed Mr. Palecek to file any response he had to Defendants' Motion on or before October 29, 2010.  (*See* Doc. # 44).  Mr. Palecek's copy of the court's Minute Order was not returned to the court in the mail as undeliverable.  To date, Mr. Palecek has not filed any response to Defendants' Motion.  The court has thus reviewed the Motion, the entire case file, the exhibits, the affidavit, and the applicable law and is sufficiently advised in the premises.

1

I.      Statement of the Case

Plaintiff Mr. Palecek is a Jewish inmate at the Sterling Correctional Facility

("SCF") who has been granted a kosher diet in accordance with his religious beliefs.

(*See* Amended Prisoner Complaint ("AC") at p. 5 of 10).   Mr. Palecek brings two claims

against several Colorado Department of Corrections ("CDOC") employees, the first

pursuant to 42 U.S.C. § 1983 for allegedly depriving him of his rights under the free

exercise clause of the First Amendment and the second pursuant to the Religious Land

Use and Institutionalized Persons Act of 2000, 42 U.S.C. §§ 2000cc *et seq*. ("RLUIPA").

(*See* AC at pp. 4, 5 of 10).   Mr. Palecek alleges that beginning in January 2009,

Defendants "failed to ensure that the facility and kitchen are kept in compliance with the

Kashrus (dietary laws of Judiasm [sic]).   This forces me to defile myself by eating food

from which my sincerely held religious belief requires me to abstain."   (*See id*. at p. 5 of

10).   Mr. Palecek further alleges that Defendant Brooks refused "to allow me to inspect

the Kosher kitchen myself to verify it was being kept in compliance with the Kashrus."

(*See id*.).   Finally, Mr. Palecek alleges he was subjected to retaliation by CDOC staff

when he attempted to "resolve" these issues.   (*See id*. at pp. 4, 7 of 10).

On August 18, 2010, the District Court approved the Recommendation of United

States Magistrate Judge and dismissed Defendants Zavaras, Milyard, and Chapdelaine

with prejudice from Mr. Palecek's claim for monetary damages under RLUIPA.   (*See*

Doc. # 41).   The District Court also dismissed Defendants Zavaras, Milyard, and

Chapdelaine with prejudice in their individual capacities from Mr. Palecek's § 1983

claims.   (*See id*.).   The court ordered that this action proceed as to Defendants

2

Zavaras, Milyard, and Chapdelaine only in their official capacities for prospective

equitable relief under Mr. Palecek's § 1983 and RLUIPA claims and on all claims as to

Defendants Brooks, Hoffman, and Revord, who had filed their Answer.  (*See id.*).


II.     Standard of Review

Defendants seek summary judgment on the AC pursuant to Fed. R. Civ. P.

56(c).  "Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may

grant summary judgment where the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, show that there is no genuine

issue as to any material fact and the . . . moving party is entitled to judgment as a

matter of law."  *Montgomery v. Board of County Commissioners of Douglas County,*

*Colorado*, 637 F. Supp. 2d 934, 939 (D. Colo. 2009) (internal quotation marks and

citations omitted).

Defendants raise the defense of qualified immunity.  Whether Defendants are

entitled to qualified immunity is a legal question.  *Wilder v. Turner*, 490 F.3d 810, 813

(10th Cir. 2007), *cert. denied*, 552 U.S. 1181 (2008).  "[W]e review summary judgment

orders deciding qualified immunity questions differently from other summary judgment

decisions."  *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009) (quoting *Medina v.*

*Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001).  "When a defendant asserts qualified

immunity at summary judgment, the burden shifts to the plaintiff to show that: (1) the

defendant violated a constitutional right and (2) the constitutional right was clearly

established."  *Martinez*, 563 F.3d at 1088 (citing *Pearson v. Callahan*, 555 U.S. 223,

3

129 S.Ct. 808, 815-16 (2009)).  Only if Mr. Palecek satisfies both of these prongs will the burden shift to Defendants to assume the normal burden of showing that there are no disputed material facts and that they are entitled to judgment as a matter of law. *Clark v. Edmunds*, 513 F.3d 1219, 1222 (10th Cir. 2008).  If "the plaintiff fails to carry either part of his two-part burden, the defendant is entitled to qualified immunity." *Albright v. Rodriguez*, 51 F.3d 1531, 1535 (10th Cir. 1995).  *See also Wilder*, 490 F.3d at 813 ("If the [defendant]'s conduct did not violate a constitutional right, the inquiry ends and the [defendant] is entitled to qualified immunity.") (citation omitted).  While it may be appropriate to conduct the qualified immunity analysis by first determining whether a constitutional violation occurred and then determining whether the constitutional right was clearly established, the order of those analytical steps is not mandatory.  *See Pearson*, 129 S.Ct. at 818 (overruling *Saucier v. Katz*, 533 U.S. 194 (2001)).

"A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers."  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)). "The *Haines* rule applies to all proceedings involving a pro se litigant, including . . . summary judgment proceedings."  *Hall*, 935 F.2d at 1110 n. 3 (citations omitted). However, the court cannot be a pro se litigant's advocate.  *Yang v. Archuleta*, 525 F. 3d 925, 927 n. 1 (10th Cir. 2008).

As the AC has been sworn to under penalty of perjury (*see* Doc. # 9 at p. 9 of 10), the court may treat it as an affidavit.  *Green v. Branson*, 108 F.3d 1296, 1301 n. 1

(10th Cir. 1997).  Where the court treats a verified complaint as an affidavit, whether a party's affidavit in opposition to summary judgment is "sufficient to create a genuine issue of material fact must be evaluated in light of the principle that 'conclusory allegations without specific supporting facts have no probative value.' " *Nichols v. Hurley*, 921 F.2d 1101, 1113 (10th Cir. 1990) (quoting *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985)).  *See also Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1311 (10th Cir. 2010) ("[A] verified complaint may be treated as an affidavit for purposes of summary judgment if it satisfies the standards for affidavits set out in Rule 56(e).") (internal quotation marks and citation omitted).  "[T]here may be cases where the sole reliance on a verified complaint would be insufficient to meet a nonmoving party's burden . . . , especially when the allegations contained in the pleading are merely conclusory."  *Conaway v. Smith*, 853 F.2d 789, 792-93 (10th Cir. 1988).

Fed. R. Civ. P. 56(e) specifically contemplates the consequences of Mr. Palecek's failure to oppose the summary judgment motion:

> When a motion for summary judgment is properly made and supported, an opposing  party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided by this rule -- set out specific facts showing a genuine issue for trial.  If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

*See also Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160-61 (1970) (the burden on the nonmovant to respond arises only if the summary judgment motion is properly "supported" as required by Rule 56(c)), *superseded on other grounds by Celotex Corp v. Catrett*, 477 U.S. 317 (1986).  "Accordingly, summary judgment is 'appropriate' under Rule 56(e) only when the moving party has met its initial burden of production under

Rule 56(c)." *Murray v. City of Tahlequah, Oklahoma*, 312 F.3d 1196, 1200 (10th Cir.

2002). "If the evidence produced in support of the summary judgment motion does not

meet this burden, summary judgment must be denied even if no opposing evidentiary

matter is presented." *Id*. (internal quotation marks and citation omitted). "If the

nonmoving party fails to respond, the district court may not grant the motion without first

examining the moving party's submission to determine if it has met its initial burden of

demonstrating that no material issues of fact remain for trial and the moving party is

entitled to judgment as a matter of law." *Id*. *See also Armstrong v. Swanson*, 2009 WL

1938793 at * 7 (D. Colo. July 2, 2009) ("When a party with the burden of proof fails to

respond to a motion for summary judgment, the motion is not reflexively granted; rather,

the Court simply deems the non-movant to have waived the opportunity to assert any

additional facts and examines whether the facts asserted by the movant warrant a trial

or permit entry of judgment as a matter of law.") (citation omitted); *Barton v. City and

County of Denver*, 432 F. Supp. 2d 1178, 1188 (D. Colo. 2006) (although plaintiff's

failure to make a substantive response constituted a confession of facts asserted by

defendants, it remained incumbent upon the court to make the specific determinations

required under Rule 56(c)).[1]


III.    Analysis

A.    Official Capacity Liability for First Amendment Claims

        Mr. Palecek's claims for monetary damages brought against Defendants Brooks,

_____

        [1]    Copies of unpublished decisions cited are attached to this
Recommendation.

Hoffman, and Revord in their official capacities pursuant to § 1983 are barred by the Eleventh Amendment and properly dismissed with prejudice.  (*See* Order (Doc. # 41); Recommendation of United States Magistrate Judge (Doc. # 39) at pp. 4-6 of 17). Thus, Defendants Brooks, Hoffman, and Revord are entitled to summary judgment on Mr. Palecek's § 1983 claims for monetary damages against them in their official capacities, leaving for resolution only Mr. Palecek's claim under § 1983 against them in their individual capacities and for injunctive relief in their official capacities.  (*See id.*).

B.    First Amendment Claim

Mr. Palecek alleges a claim for relief pursuant to 42 U.S.C. § 1983 for deprivation of his right to exercise his religion "freely as guaranteed by the First Amendment of the United States Constitution. . . ."  (*See* AC (Doc. # 9) at p. 4 of 10). Title 42 U.S.C. § 1983 creates a cause of action where a  "person . . . under color of any statute, ordinance, regulation, custom or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person . . . to the deprivation of any rights, privileges or immunities secured by the Constitution."  Section 1983 does not create any substantive rights; rather, it creates only a remedy for violations of rights secured by federal statutory and constitutional law.  *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 616-18 (1979).  To establish a claim under § 1983, a plaintiff must prove he was deprived of a right secured by the Constitution or laws of the United States and that the alleged deprivation was committed under color of law.  *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999).

The First Amendment to the United States Constitution provides, in pertinent part, that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend. I.  "It is well-settled that '[i]nmates . . . retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion.'" *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987)).  "Yet such protections are not without reasonable limitations."  *Kay*, 500 F.3d at 1218.  A prisoner's right to a diet consistent with his religious beliefs is clearly established in the Tenth Circuit.  *Makin v. Colorado Dep't. of Corrections*, 183 F.3d 1205, 1210 n. 4 (10th Cir. 1999).  The right to a diet that complies with the kosher dietary requirements of the tenets of Orthodox Judaism is recognized in the Tenth Circuit.  *Beerheide v. Suthers*, 286 F.3d 1179 (10th Cir. 2002).  Kosher laws govern not only the ingredients (both animal and vegetable), but the source, storage, and preparation of those ingredients, and the service of meals.  *Id.* at 1187.

In order to establish a constitutional violation of his right to free exercise of religion, the plaintiff bears the initial burden of demonstrating that the restriction substantially burdened his sincerely held religious beliefs.  *Boles v. Neet*, 486 F.3d 1177, 1182 (10th Cir. 2007).  The Supreme Court has defined a "substantial burden" in the context of the Free Exercise clause as one that "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs," *Thomas v. Review Bd. of Indiana Employment Sec. Div.*, 450 U.S. 707, 718 (1981), or one that forces a person to "choose between following the precepts of her religion and forfeiting [governmental]

8

benefits, on the one hand, and abandoning one of the precepts of her religion . . . on the other hand." *Sherbert v. Verner*, 374 U.S. 398, 404 (1963).  *See also Wares v. Simmons*, 524 F.Supp.2d 1313, 1320 n. 9 (D. Kan. 2007) (A "substantial burden" is one that (1) significantly inhibits or constrains a plaintiff's religious conduct or expression; (2) meaningfully curtails a plaintiff's ability to express adherence to his faith, or (3) denies the plaintiff reasonable opportunity to engage in fundamental religious activities.").  A substantial burden must place more than an inconvenience upon religious exercise; the burden must be substantial and significantly interfere with a plaintiff's practice of religious beliefs.  *Schnitzler v. Reisch*, 518 F. Supp. 2d 1098, 1104 (D.S.D. 2007).  *See also Adkins v. Kaspar*, 393 F.3d 559, 570 (5th Cir. 2004) (restriction is a substantial burden "if it truly pressures the adherent to significantly modify his religious behavior and significantly violate his religious beliefs.").  *Cf. Thornburgh v. Abbott*, 490 U.S. 401, 418 (1989) (noting that *O'Lone* found prison regulations valid in part because the prisoners were permitted to participate in other Muslim religious ceremonies).

Mr. Palecek began participating in the kosher diet program on approximately October 31, 2008.  (*See* Exhibit B, Defendants' Response to Plaintiff's Interrogatories and Request for Production (Doc. # 42-2) at p. 5 of 10).  On or about February 10, 2009, Defendant Brooks denied Mr. Palecek's request that he be permitted to inspect the kitchen at SCF himself to verify that it was being kept in compliance with the Kashrus.  (*See* AC (Doc. # 9) at p. 5 of 10 ¶ 3).  On January 21, 2009, Mr. Palecek delivered a letter to Department of Corrections Food Services Operations Manager Charleen Crockett that detailed his complaints regarding the Kosher program.  (*See*

Exhibit C, Letter dated January 21, 2009, from Inmate Paul Palecek to Charleen

Crockett (Doc. # 42-3)).  Mr. Palecek alleges that the kosher kitchen is deficient as to:

"1) product acquisition and storage, 2) food preparation and cooking, 3) menu

compliance and the accuracy of all trays served, 4) the integrity of the storage and

preparation areas as required by CDOC regulations."  (*See* AC (Doc. # 9) at pp. 5 of

10).

     "The Scroll K is a non-profit kosher (Kashrus) certification agency located in

Denver, Colorado."  (*See* Exhibit E, Affidavit of Rabbi Yisroel Rosskamm, (Doc. # 42-5)

at ¶ 2.  "The Scroll K provides kashrus services to manufacturers, bakeries, dairies,

candy companies, chemical companies, nursing homes, restaurants, caterers,

supermarket chains, and hotel chains."  *Id.*  Rabbi Rosskamm is the Rabbinical

Administrator for The Scroll K Vaad Hakashrus.  *Id.* at ¶ 1.

     "The Scroll K is a consultant to the Colorado Department of Corrections"

("CDOC") and "helped the CDOC develop their kosher meal program."  *Id.* at ¶ 3;  *see*

*also* Exhibit D, CDOC Kosher Meal Guidelines (Doc. # 42-4).  The Scroll K reviews "the

CDOC's kosher guidelines and menus."  (*See* Doc. # 42-5 at ¶ 3).  "The Scroll K

monitors the CDOC's kosher program by inspecting all CDOC facilities that house

inmates on a kosher diet at least twice per year. The facilities usually do not have

much, if any, advance notice prior to [their] visits."  (*See* Doc. # 42-5 at ¶ 7).  SCF Food

Services has contacted Rabbi Rosskamm of Scroll K "between visits when questions

arose regarding kosher procedures."  *Id.* at ¶ 5.

     "The Scroll K rabbi who conducts the inspection, is usually [Rabbi Rosskamm] or

10

Rabbi Hillel Erlanger." (*See* Doc. # 42-5 at ¶ 8). "A written report follows all inspections and indicates whether Scroll K guidelines for kosher food preparation are being following at the facility." *Id.* "The reports also address any food preparation issues observed by the rabbi or reported by inmates." *Id.* "The report is sent to Charleen Crockett, the CDOC's Food Service Operation Manager." *Id.* If Scroll K observes any mistakes, the rabbis "inform appropriate Food Services personnel and advise them how to correct the mistake." *Id.*

"Kosher food at the Sterling Correctional Facility ("SCF"), as in all facilities, is prepared in kosher meal preparation areas." (*See* Doc. # 42-5 at ¶ 4). "Most of the kosher food is delivered to SCF and prepared under guidelines that minimize the need for cooking." (*See* Doc. # 42-5 at ¶ 6). "Items that require cooking, such as eggs, potatoes, and rice, are prepared in a designated microwave or electric steamer." *Id.* "The items are cooked in a room that is used for kosher food preparation" and "[t]he food is prepared on covered tables." *Id.* "When conventional cooking methods are not used, the preparation of kosher food by non-Jewish individuals will not render the food non-kosher." *Id.*

Rabbi Rosskamm "visited SCF three times in 2009, and concluded that SCF's kosher meal program was satisfactory." (*See* Doc. # 42-5 at ¶¶ 9-11). After the filing of Mr. Palecek's Complaint, Rabbi Rosskamm visited the SCF facility and completed an inspection on December 9, 2009. (*See* Doc. # 42-5 at  ¶ 12). Rabbi Rosskamm met with Mr. Palecek on December 9, 2009 "and asked him what apprehensions he had" with respect to the kosher meal program at SCF.  (*See* Doc. # 42-5 at ¶ 13). Mr.

11

Palecek did not mention any of the allegations that he raises in this lawsuit.  *Id.*

Mr. Palecek alleges "the use of milk, margarine, and vegetables from containers not certified as kosher or parve (non-dairy)." (*See* Doc. # 9 at p. 5 of 10; Doc. # 42-5 at ¶ 14).  Rabbi Rosskamm determined that SCF is following kosher guidelines as to milk, margarine, and vegetables.  *Id.*  Mr. Palecek also alleges "the use of non-kosher equipment, e.g. cutting boards, can opener and microwave to heat the kosher meals." (*See* Doc. # 9 at p. 5 of 10; Doc. # 42-5 at ¶ 15).  Rabbi Rosskamm determined that since SCF has "adequate kosher dedicated equipment and a kosher microwave available," there is "no reason to use any non-kosher equipment for the kosher diet." (*See* Doc. # 9 at p. 5 of 10; Doc. # 42-5 at ¶ 15).  Rabbi Rosskamm also investigated Mr. Palecek's allegation "that kosher equipment is washed in the non-kosher cleaning areas" and "found no violations in SCF in this regard during 2009." (*See* Doc. # 9 at p. 5 of 10; Doc. # 42-5 at ¶ 16).  In response to Mr. Palecek's complaint about being denied the opportunity to personally inspect the kosher preparation area, Rabbi Rosskamm noted that Mr. Palecek "clearly has limited knowledge regarding kosher law, as indicated by some of his allegations. . ." and concluded that there would be "no "positive achievement by permitting him to inspect the area." (*See* Doc. # 42-5 at ¶ 17).

Rabbi Rosskamm concluded that "SCF's kosher preparation area is well set up and meets Scroll K guidelines." (*See* Doc. # 42-5 at ¶ 4). Rabbi Rosskamm found no violations in the areas complained of by Mr. Palecek during any of his visits to SCF in 2009. (*See* Doc. # 42-5 at ¶ 13).  Rabbi Rosskamm "fail[s] to understand what [Mr. Palecek's concerns may be." (*See* Doc. # 42-5 at ¶ 13).

The court finds that Mr. Palecek has not met his burden to show that Defendants violated his First Amendment rights with regard to the kosher meal program.  Mr. Palecek admits that SCF has a kosher diet program and that he has been granted a kosher diet in accordance with his religious belief.  (*See* Doc. # 9 at p. 5 of 10 ¶ 1).  Mr. Palecek makes nothing more than vague conclusory allegations that kosher procedures were violated at SCF with respect to: (1) acquisition and storage; (2) food preparation and cooking; (3) menu compliance and accuracy of trays; and (4) integrity of storage and preparation areas.  (*See* Doc. # 9 at p. 5 of 10 ¶ 2).  "A party opposing summary judgment 'may not rely merely on allegations or denials in its own pleading; rather, its response must -- by affidavits or as otherwise provided in [Rule 56] -- set out specific facts showing a genuine issue for trial.' " *Browne v. San Francisco Sheriff's Dept.*, 616 F. Supp. 2d 975, 986 (N.D. Cal. 2009) (quoting Fed. R. Civ. P. 56(e)(2)).  "Thus, it is the burden of the party opposing summary judgment to make an affirmative showing on all matters placed in issue by the motion as to which it will have the burden of proof at trial."  *Id.*  Mr. Palecek may not "overcome a properly submitted motion for summary judgment based on qualified immunity grounds without more than conclusory and nonspecific allegations."  *Pueblo Neighborhood Health Centers, Inc. v. Losavio*, 847 F.2d 642, 650 (10th Cir. 1988).

Mr. Palecek neither alleges nor demonstrates that he has any specialized knowledge of the practices or procedures that render food kosher or non-kosher.  Mr. Palecek's allegation that he was denied the opportunity to personally inspect the kitchen to verify that it was being kept in compliance with the Kashrus (*see* Doc. # 9 at

p. 5 of 10 ¶ 3) supports the evidence that he has no first-hand knowledge that the kitchen practices are in violation of kosher meal guidelines.  The affidavit of the CDOC's Rabbinical consultant, Rabbi Rasskamm, establishes that during the relevant time period, SCF kosher meal preparation adhered to the practices dictated by the Kashrus. Rabbi Rasskamm has been recognized in the District of Colorado "as an expert in Jewish dietary laws."  *Mounts v. Suthers*, 2008 WL 3974364 * 2 (D. Colo. Aug. 22, 2008).  Mr. Palecek's allegations of meals inconsistent with kosher requirements have been refuted by Rabbi Rosskamm in their entirety.  (*See* Doc. # 9 at p. 5 of 10 ¶ 2; Doc. # 42-5).  Other than his own conclusory allegations, Mr. Palecek has not presented evidence that Defendants did not comply with kosher dietary requirements, practices, and procedures.  As Mr. Palecek's evidence is insufficient to carry his burden on summary judgment, Defendants are entitled to summary judgment on Mr. Palecek's First Amendment claim.

C.     First Amendment Retaliation Claim

        Mr. Palecek alleges that when he attempted "to resolve the issues" about his kosher diet, he was met with retaliation by CDOC personnel in retaliation for the exercise of his First Amendment rights.  (*See* Doc. # 9 at p. 7 of 10).  He alleges that Defendants Brooks and Hoffman threatened him with Code of Penal Discipline ("COPD") write-ups and placement in administrative segregation in response to his requests to inspect the kitchen and for assurances that staff not defile the kosher serving area.  *See id*.  He alleges that "Brooks' and Hoffman's threats stopped me from

14

exercising a protected right." *See id.*

"[G]overnment action which chills constitutionally protected speech or expression contravenes the First Amendment." *Wolford v. Lasater*, 78 F.3d 484, 488 (10th Cir. 1996). Prison "officials may not retaliate against or harass an inmate because of the inmate's exercise of his constitutional rights . . . even where the action taken in retaliation would be otherwise permissible." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998) (internal quotation marks and citation omitted). However, "an inmate is not inoculated from the normal conditions of confinement . . . merely because he has engaged in protected activity." *Id.*, 149 F.3d at 1144.

To establish a First Amendment retaliation claim, a prisoner must demonstrate that: (1) she engaged in protected activity; (2) she suffered an adverse action; and (3) a causal connection exists between the protected conduct and the adverse action. *Escobar v. Reid*, 668 F. Supp 2d 1260, 1275-76 (D. Colo. 2009) (citing *Scott v. Churchill*, 377 F.3d 565, 569 (6th Cir. 2004)). "A prisoner claiming retaliation for exercising First Amendment rights must show that a retaliatory motive was the but-for cause of the challenged adverse action." *Strope v. Cummings*, 382 Fed. Appx. 705, 710, 2010 WL 2294524 (10th Cir. June 9, 2010) (citing *Peterson*, 149 F.3d at 1144 ("[A] plaintiff must prove that but for the retaliatory motive, the incidents to which he refers, including the disciplinary action, would not have taken place." (internal quotation marks and citation omitted). The inmate must make this showing by pleading specific facts demonstrating the causal connection. *Peterson*, 149 F.3d at 1144. "[I]t is imperative that [a] plaintiff's pleading be factual and not conclusory. Mere allegations of

15

constitutional retaliation will not suffice; plaintiffs must, rather, allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights." *Frazier v. Dubois*, 922 F.2d 560, 562 n. 1 (10th Cir. 1990).

First, as Mr. Palecek has no constitutional right to inspect the prison kitchen or for assurances that kitchen staff did not "defile the Kosher serving area," he was not engaging in protected activity.  Even assuming that Mr. Palecek engaged in protected activity to the extent that he sought to ensure "that the kitchen and food are kept in compliance with the Kashrus (dietary laws of Jud[ai]sm)," he has presented no evidence that he suffered an adverse action.  The evidence does not show, nor does Mr. Palecek allege, that Defendants took any action with regard to the threats. Defendants Brooks' and Hoffman's alleged statements were, at most, isolated verbal threats that were not actually carried out.  Verbal harassment, or even threats, are generally held not to rise to the level of adverse action that will support a First Amendment retaliation claim.  *See Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 182 (6th Cir. 2004) ("We have stated that '[m]ere threats . . . are generally not sufficient to satisfy the adverse action requirement.'");  *Maclean v. Secor*, 876 F.Supp. 695, 699 (E.D. Pa. 1995) (threats alone do not constitute retaliation) (collecting cases);  *Cabassa v. Smith*, No. 1212495, 2009 WL 1212495, at *7 (N.D.N.Y. Apr. 30, 2009) ("Courts addressing claims of verbal threats and harassment advanced to support First Amendment retaliation claims have uniformly held that such conduct is not sufficiently serious to meet this standard") (collecting cases).[2]  Mr. Palecek has not demonstrated that he

---

[2]     Nor would Defendants have been on notice that they were violating a clearly established right; thus, they are entitled to qualified immunity from Mr. Palecek's

suffered an adverse action based on unfulfilled threats.

Third, the court must determine whether Defendants' alleged statements were substantially motivated by Mr. Palecek's constitutionally protected conduct.  Mr. Palecek alleges that "[w]hen I requested I be allowed to inspect the kitchen myself Captain Brooks informed me I was challenging her authority.  She told me she would not tolerate this and threatened me with a Code of Penal Discipline (COPD) write up and Administrative Segregation (Ad Seg)." (Doc. # 9 at p. 7 of 10 ¶ 13).  Mr. Palecek alleges that "[w]hen I asked Captain Hoffman to assure that staff didn't defile the Kosher serving area by sitting on it he told me to drop the issue and threatened me with COPD writeups and Ad Seg . . . ." (Doc. # 9 at p. 7 of 10 ¶ 14).  Mr. Palecek does not have a First Amendment right to personally inspect the prison kitchen or enforce his perceived violations of kosher standards.  He has failed to show that the motive for Defendants statements was retaliation for the exercise of his First Amendment rights, as opposed to an effort to maintain institutional order and discipline.  Mr. Palecek has not demonstrated that the alleged conduct by Brooks and Hoffman would not have taken place "but for" the retaliatory motive related to his exercise of his First Amendment rights.  As the evidence simply does not demonstrate a causal connection between Defendants Brooks' and Hoffman's statements and Mr. Palecek's exercise of

---

First Amendment retaliation claim.  *See Zia Trust Co. ex rel. Causey v. Montoya*, 597 F.3d 1150, 1155 (10th Cir. 2010) ("Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains.") (internal quotation marks and citation omitted).  Neither the United States Supreme Court nor this Circuit has defined with specificity the contours of when a threat constitutes an adverse action in the official-detainee setting.

his First Amendment rights, Defendants are entitled to summary judgment on Mr.

Palecek's First Amendment retaliation claim.


D.      Qualified Immunity

The court concludes in this Recommendation that Mr. Palecek fails to satisfy one

part of his two-part burden –  that Defendants Brooks, Hoffman, or Revord violated a

constitutional right.  Defendants Brooks, Hoffman and Revord are thus entitled to

qualified immunity in their individual capacities from Mr. Palecek's claims brought under

§ 1983 and entitled to summary judgment on Mr. Palecek's constitutional claims in the

AC.  *See Wilder*, 490 F .3d at 815 (instructing district court on remand to enter

judgment in favor of defendant on basis of qualified immunity, where plaintiff failed to

carry his burden to show violation of a constitutional right).


E.      RLUIPA Claim

Mr. Palecek also alleges a claim for relief for deprivation of his right to exercise

his religion "freely as guaranteed by . . . RLUIPA."  (*See* AC (Doc. # 9) at p. 4 of 10).

First, to the extent that Mr. Palecek brings his RLUIPA claim against Defendants

Brooks, Hoffman, and Revord in their individual capacities, it is properly dismissed with

prejudice.  (*See* Recommendation of United States Magistrate Judge (Doc. # 39) at pp.

10-11 of 17; Order (Doc. # 41)).[3]  Further, to the extent that Mr. Palecek seeks

_____

        [3]      Because the court concludes that RLUIPA does not permit a claim against
Defendants in their individual capacities, the court need not address the secondary
question of whether they would be entitled to a defense of qualified immunity as to the
RLUIPA claim.  *See Sossamon*, 560 F.3d at 327 ("if no private right of action exists

18

monetary damages  pursuant to RLUIPA, such claim is properly dismissed with prejudice.  (*See id.* at pp. 11-13 of 17; Order (Doc. # 41)).  Thus, Defendants Brooks, Hoffman, and Revord are entitled to summary judgment on Mr. Palecek's RLUIPA claims against them in their individual capacities and in their official capacities as to monetary damages, leaving only Mr. Palecek's claim for injunctive relief under RLUIPA for the court's evaluation.

Section 3 of RLUIPA applies strict scrutiny to government actions that substantially burden the religious exercise of institutionalized persons.

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in [42 U.S.C. § 1997], even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person --
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C.  § 2000cc-1(a).  "The term 'substantial burden' as used in [RLUIPA] is not intended to be given any broader interpretation than the Supreme Court's articulation of the concept of substantial burden of religious exercise."  *Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 661 (10th Cir. 2006) (quoting 146 CONG.

---

against the defendants in their individual capacities, then a qualified immunity . . . analysis would be unnecessary.");  *Smith v. Allen*, 502 F.3d 1255, 1275 (11th Cir. 20070 ("because we conclude that section 3 of RLUIPA does not permit a claim against the defendant-appellees in their individual capacities, we need not address the secondary question of whether the defendant-appellees would be entitled to a defense of qualified immunity") (citing *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir.1991) (stating that the qualified immunity defense only applies when the defendant is sued individually)).

REC. 7774-01, 7776).

> Thus, a claim under RLUIPA includes four elements. On the first two elements, (1) that an institutionalized person's religious exercise has been burdened and (2) that the burden is substantial, the plaintiff bears the burden of proof. Id. § 2000cc-2(b). Once a plaintiff has established that his religious exercise has been substantially burdened, the onus shifts to the government to show (3) that the burden furthers a compelling governmental interest and (4) that the burden is the least restrictive means of achieving that compelling interest.

*Spratt v. Rhode Island Dept. of Corrections*, 482 F. 3d 33, 37-38 (1st Cir. 2007) (citing 42 U.S.C. § 2000cc-1(a).

The Tenth Circuit has defined substantial burden within the context of RLUIPA. "[A] religious exercise is substantially burdened under 42 U.S.C. ¶ 2000cc-1(a) when a government (1) requires participation in an activity prohibited by a sincerely held religious belief, or (2) prevents participation in conduct motivated by a sincerely held religious belief, or (3) places substantial pressure on an adherent either not to engage in conduct motivated by a sincerely held religious belief or to engage in conduct contrary to a sincerely held religious belief, such as where the government presents the plaintiff with a Hobson's choice-an illusory choice where the only realistically possible course of action trenches on an adherent's sincerely held religious belief." *Abdulhaseeb*, 600 F.3d 1301, 1315 (10th Cir. 2010).  To proceed with his RLUIPA claim, Mr. Palecek "must demonstrate he wishes to engage in (1) a religious exercise (2) motivated by a sincerely held belief, which exercise (3) is subject to a substantial burden imposed by the government." *Id.* 1312 (citations omitted).  If Mr. Palecek fails to demonstrate a substantial burden, the inquiry ends.

Based upon the evidence outlined in part III. B., *supra*, Mr. Palecek fails to

demonstrate he has been subjected to a substantial burden on his religious exercise. The affidavit of Rabbi Rosskamm establishes that during the relevant time period, SCF kosher meal preparation adhered to the practices dictated by the Kashrus.  Mr. Palecek's allegations of meals inconsistent with kosher requirements have been refuted by Rabbi Rosskamm in their entirety.  (*See* Doc. # 9 at p. 5 of 10 ¶ 2;  Doc. # 42-5). Other than his own conclusory allegations, Mr. Palecek has not presented any evidence that Defendants did not comply with kosher dietary requirements, practices, and procedures.  As Mr. Palecek's evidence is insufficient to establish the existence of a substantial burden on his exercise of his religion, Defendants are entitled to summary judgment on Mr. Palecek's RLUIPA claim.

F.      Injunctive Relief

Mr. Palecek seeks prospective injunctive relief from Defendants in the form of "ordering Defendants to provide me with adequate Kosher meals and to stop retaliating against me for exercising my protected rights."  (*See* Doc. # 9 at p. 9 of 10).  Injunctive relief is an extraordinary remedy that should only be granted when the moving party clearly and unequivocally demonstrates its necessity.  *See Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005).  In the Tenth Circuit, a party requesting injunctive relief must clearly establish all four of the following elements: (1) the party will suffer irreparable injury unless the injunction issues; (2) the threatened injury outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood of success on the merits.  *Id.*  Failure to establish any of the four

21

elements is sufficient to deny injunctive relief. *Guy Carpenter & Co. v. Provenzale*, 334 F.3d 459, 464 (5th Cir. 2003) (citation omitted). The movant has the burden on all four elements. *Id.*

The court's Recommendation that summary judgment be granted in favor of Defendants and against Mr. Palecek on all of the claims remaining in the AC has the practical effect of denying Mr. Palecek's request for injunctive relief. *See Hutchinson v. Pfeil*, 105 F.3d 566, 569-70 (10th Cir. 1997) (where a district court granted a motion for partial summary judgment "against a plaintiff who has sought injunctive relief" without specifically referring "to injunctive relief," but "addressed the merits of the underlying claim," the court's order "amounts to a practical denial of injunctive relief"). As the court recommends that summary judgment be granted in favor of all Defendants and against Mr. Palecek on all of Mr. Palecek's claims, Mr. Palecek's request for injunctive relief fails.

G.     Conclusion

Mr. Palecek has not presented evidence adequate to establish a disputed issue of material fact that Defendants violated a constitutional right or RLUIPA or established a basis for injunctive relief. Accordingly,

IT IS RECOMMENDED that "Defendants' Motion for Summary Judgment" (filed September 30, 2010) (doc. # 42) be GRANTED and summary judgment enter on the Amended Complaint (Doc. # 9) in favor of Defendants and against Plaintiff.

**Advisement to the Parties**

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b);  *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."  *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");  *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling);  *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir.

1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado, this 18th day of March, 2011.

BY THE COURT:


  s/Craig B. Shaffer
United States Magistrate Judge

24